1 **PERKINS COIE LLP**
Oliver M. Gold, Bar No. 279033
2 OGold@perkinscoie.com
1888 Century Park East, Suite 1700
3 Los Angeles, California 90067
Telephone: +1.310.788.9900
4 Facsimile:  +1.310.788.3399

5 Lauren Trambley, Bar No. 340634
LTrambley@perkinscoie.com
6 505 Howard Street, Suite 1000
San Francisco, California 94105
7 Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

8

Attorney for Plaintiff
9 GREGG WILLIAMS, solely in his capacity as court appointed
Receiver

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13

14

| | |
|---|---|
| 15 GREGG WILLIAMS, solely in his capacity as court appointed Receiver pursuant to that certain Order Appointing Receiver and Granting Preliminary Injunction in Aid of Receiver entered on July 15, 2022 in the Superior Court of the State of California, County of San Francisco, as successor-in-interest to 166 Geary Street Retail Owner LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>LA PERLA NORTH AMERICA, INC., a Delaware Corporation,<br><br>Defendant.<br><br>AND RELATED COUNTER-CLAIM | Case No.  3:23-cv-01633<br><br>**PLAINTIFF AND COUNTER-DEFENDANT GREGG WILLIAMS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT AND COUNTER-CLAIMANT LA PERLA NORTH AMERICA, INC.'S COUNTER-CLAIM**<br><br>Judge:       Hon. Jacqueline Scott Corley<br>Date:        July 13, 2023<br>Time:        10:00 a.m.<br>Courtroom:   8 |

28

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.   LANDLORD'S MOTION TO DISMISS SHOULD BE SUSTAINED.. .......................... 2

    A.   La Perla was required to obtain permission to sue the receiver. ............................. 2

    B.   Landlord did not breach the Lease by continuing the Lease in full force and
          effect, had no duty to mitigate damages, and never terminated the Lease. .............. 3

    C.   La Perla's breach of implied covenant counterclaim is duplicative and
          should be dismissed. ............................................................................................. 6

    D.   La Perla's restitution counterclaim, whether quasi-contract or one of unjust
          enrichment, fails as a matter of law .......................................................................... 8

III.   LEAVE TO AMEND SHOULD BE DENIED. ................................................................. 9

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

**CASES**

3

4

*250 L.L.C. v. PhotoPoint Corp,*
    131 Cal. App. 4th 703 (2005)..................................................................... 4

5

6

*Alexander v. Hillman,*
    296 U.S. 222 (1935)................................................................................... 2

7

8

*Bevis v. Terrace View Partners, LP,*
    33 Cal. App. 5th 230 (2019)...................................................................... 3

9

*Broam v. Bogan,*
    320 F.3d 1023 (9th Cir. 2003).................................................................. 5

10

11

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
    222 Cal. App. 3d 1371 (1990)................................................................... 7

12

13

*Fed. Deposit Ins. Corp. v. Mademoiselle of Cal,*
    379 F.2d 660 (9th Cir. 1967).................................................................... 2

14

*Grant v. Buckner,*
    172 U.S. 232 (1898)................................................................................... 2

15

16

*Hamilton & High, LLC v. City of Palo Alto,*
    89 Cal. App. 5th 528 (2023)...................................................................... 8

17

18

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.,*
    2023 WL 1768120 (N.D. Cal. Feb. 3, 2023)............................................ 7

19

20

*In re 8800 LLC,*
    2019 WL 268577 (Bankr. C.D. Cal. Jan. 18, 2019)................................. 4

21

*In re Lomax,*
    194 B.R. 862 (B.A.P. 9th Cir. 1996)........................................................ 4

22

23

*In re Nathan,*
    98 F. Supp. 686 (S.D. Cal. 1951).............................................................. 3

24

25

*In re Windmill Farms, Inc.,*
    841 F.2d 1467 (9th Cir. 1988)................................................................ 5, 6

26

*Song fi Inc. v. Google, Inc.,*
    108 F. Supp. 3d 876 (N.D. Cal. 2015) .................................................. 8, 9

27

28

*Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.,*
    2013 WL 3974537 (N.D. Cal. July 31, 2013)......................................... 7

-iii-

*Landucci v. State Farm Ins. Co.,*
    65 F. Supp. 3d 694 (N.D. Cal. 2014) ............................................................................ 6

*McCarthy v. Poulsen,*
    173 Cal. App. 3d 1212 (1985)...................................................................................... 2

*Munoz v. MacMillan,*
    195 Cal. App. 4th 648 (2011)...................................................................................... 8

*Ostrowski v. Miller,*
    226 Cal. App. 2d 79 (1964)........................................................................................ 2

*Ramirez v. Pasternak,*
    2009 WL 10680732 (C.D. Cal. Apr. 30, 2009) ......................................................... 3

*Rutherford Holdings, LLC v. Plaza Del Rey,*
    223 Cal. App. 4th 221 (2014)...................................................................................... 8

*Third Story Music, Inc. v. Waits,*
    41 Cal. App. 4th 798 (1995)........................................................................................ 3

*Willis v. Soda Shoppes of California, Inc.,*
    134 Cal. App. 3d 899 (1982)...................................................................................... 5

**STATUTES**

Cal. Civ. Code § 1951.2 .................................................................................................. 6

Cal. Civ. Proc. Code § 568............................................................................................... 2

Cal. Civ. Code § 1950.7 .................................................................................................. 4

Cal. Civ. Code §1951.4.................................................................................................... 4

1    **I.      INTRODUCTION**

2         La Perla's opposition brief ("Opposition") fails to refute the deficiencies underlying its

3    counterclaims.  *First,* La Perla failed to obtain permission from the state court that appointed

4    Plaintiff and Counter-Defendant Gregg Williams ("Counter-Defendant" or "Landlord") as receiver

5    before filing its counterclaims ("Counter-Claim").  The Opposition cites to case law applying

6    federal law to federally-appointed receivers.  California law differs from federal law, requiring a

7    party to obtain court permission before bringing claims against a receiver, and the Court, sitting in

8    diversity, must apply state law.  La Perla's failure to obtain permission proves fatal to its Counter-

9    Claim and each counterclaim alleged therein.

10        *Second,* Landlord elected for remedies pursuant to Section 16.2(a) of the Lease and Section

11   1951.4 of the California Civil Code, which all permit Landlord to continue the Lease in full force

12   and effect, collect rent as it becomes due, and not mitigate his damages.  Landlord cannot breach

13   the Lease by engaging in conduct that was expressly authorized by the Lease.  La Perla effectively

14   concedes that the provisions of the Lease and California law allow Landlord to do what it

15   complains of, but argues that Landlord forfeited those remedies by "terminating" the Lease by

16   "accepting" the keys, making demands for rent payment, and initiating an unlawful detainer action.

17   Setting aside the fact that none of those allegations are actually contained in the Counter-Claim,

18   instead being raised in the first instance in the Opposition, those facts do not save La Perla's breach

19   of contract counterclaim from dismissal.  The express terms of Section 16.2 of the Lease clearly

20   state that the Lease may only be terminated by "written notice" from Landlord to La Perla "to that

21   effect."  La Perla does not and cannot allege that Landlord provided such written notice.  Therefore,

22   the Lease was never terminated, and Landlord was not required to mitigate damages.

23        *Third,* even if La Perla's breach of implied covenant of good faith and fair dealing claim is

24   pled in the alternative, it still must not be duplicative of the breach of contract claim.  La Perla's

25   breach of implied covenant claim is based upon the same conduct and seeks the same contractual

26   damages as its breach of contract claim.  Therefore, under California law, it should be dismissed as

27   "superfluous."

28

*Fourth,* La Perla's restitution claim is barred as a matter of law because it is not a free-standing cause of action, and La Perla fails to meet the pleading requirements for a quasi-contract claim in the alternative.  The Opposition's argument that the Counter-Claim alleges the Lease is void or unenforceable rings hollow.  The fact that crime, homelessness, and waste might have increased outside the Premises does not render the Lease void or unenforceable.  That is not a valid, affirmative defense to contract enforcement and fails to account for the **seven years** prior to "in or around April 2021" where La Perla and Landlord performed pursuant to the terms of the Lease.  *But see* Counter-Claim ("CC") ¶¶ 7, 10.  Moreover, nothing in the Lease permits La Perla to terminate or abandon the Premises for any reason, including external factors outside the scope and control of both parties.

For all the foregoing reasons, Landlord respectfully requests that the Court sustain its motion to dismiss with prejudice.

## II.     LANDLORD'S MOTION TO DISMISS SHOULD BE SUSTAINED.

### A.     La Perla was required to obtain permission to sue the receiver.

La Perla's Opposition splits hairs, arguing it was not required to obtain prior permission from the state court to assert claims against Landlord in his capacity as court-appointed receiver, because those claims are "counterclaims in response to a receiver's initial lawsuit."  Opp. at 2–3.  La Perla's distinction is without merit.  Under ***California*** law, "a receiver may not be sued without leave of court."  *McCarthy v. Poulsen*, 173 Cal. App. 3d 1212, 1219 (1985); *Ostrowski v. Miller*, 226 Cal. App. 2d 79, 84 (1964) ("A receiver is a court-appointed official who can be sued only by permission of the court appointing him."); *see also* Cal. Civ. Proc. Code § 568.  California law does not contain any exception for counterclaims or suits initiated by the receiver, nor does La Perla cite any legal authority that explicitly holds for that proposition.

The Opposition also cites to case law applying ***federal*** law for litigation involving receivers appointed by ***federal*** courts.  *See* Opp. at 2–3 (citing 15 Cyc. of Federal Proc. § 75:42 (3d ed.) (discussing federal law); *Grant v. Buckner*, 172 U.S. 232, 233 (1898) (applying federal law to action involving receiver appointed by a federal court); *Alexander v. Hillman*, 296 U.S. 222, 230 (1935) (same); *Fed. Deposit Ins. Corp. v. Mademoiselle of Cal.*, 379 F.2d 660, 662 (9th Cir. 1967)

1  (applying federal law to action involving receiver appointed by the U.S. Treasury);  *In re Nathan*,

2  98 F. Supp. 686, 687 (S.D. Cal. 1951) (applying federal law to bankruptcy case—not involving a

3  court-appointed receiver—to find jurisdiction over a creditor's counterclaim)).  These cases are not

4  applicable.

5       While federal law may permit a party to assert counterclaims against a receiver without

6  leave of court, ***California law does not***.  Because Landlord was appointed by a California state

7  court and the Court sits in diversity jurisdiction, California law controls.  *Ramirez v. Pasternak*,

8  2009 WL 10680732, at *5 (C.D. Cal. Apr. 30, 2009) ("Generally, the capacity of receivers to sue or

9  be sued in a federal district court is governed by the law of the state in which the court is held.").

10 Federal law "only governs suits against *federally*-appointed receivers" and "does not provide [a

11 party] with an avenue around the requirements of California law." *Id.* (emphasis in original).

12 Applying California law, a party's "failure to allege that [it] sought permission from the state court

13 to sue [the receiver] in federal court provides [a] basis to dismiss the [claims] against him." *Id.*

14 (granting motion to dismiss for failure to obtain permission from state court).

15      Accordingly, La Perla's failure to obtain permission from the Superior Court of California

16 to sue Landlord is grounds to dismiss the Counter-Claim and all claims asserted in it.

17      **B.      Landlord did not breach the Lease by continuing the Lease in full force and**
18            **effect, had no duty to mitigate damages, and never terminated the Lease.**

19      La Perla's Counter-Claim alleges that Landlord breached the Lease by (1) failing to

20 "comply[] with its affirmative obligation to mitigate its damages, (2) "not mak[ing] good faith

21 attempts to re-let the Premises," and (3) applying the security deposit to rental payments owed

22 under the Lease.  CC ¶¶ 15–16.  But Landlord was expressly authorized—both by California law

23 and the express terms of the Lease—to do just that.  Although the Opposition proclaims that La

24 Perla "satisfied" the "standard elements . . . to prove breach of contract," (*see* Opp. at 4), La Perla

25 fails to address that fact that "there can be no breach," and thus no satisfying the third element of

26 the counterclaim, where a party, such as Landlord, was "given the right to do what [it] did by the

27 express provisions of the contract."  *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 803

28 (1995); *see also Bevis v. Terrace View Partners, LP*, 33 Cal. App. 5th 230, 260 (2019) ("[A]

contracting party's performance of a contract in accordance with its express terms or the law cannot constitute a breach of the contract.").

Section 16.2 of the Lease clearly gives Landlord the right to elect damages under Section 1951.4 of the California Civil Code. *See* Compl., Ex. 2, § 16.2(a) ("Landlord may continue this Lease in full force and effect, . . . and Landlord shall have the right to collect rent when due as set forth in California Civil Code Section 1951.4."). California enacted Section 1951.4 of the California Civil Code to "allow[] the parties to contract away the landlord's duty to relet under § 1951.2" and to "return[] responsibility for avoiding the consequences of vacancy to the tenant," meaning Landlord has no duty to mitigate damages or re-let the Premises. *See In re Lomax*, 194 B.R. 862, 866 (B.A.P. 9th Cir. 1996). That duty to mitigate falls squarely with La Perla, as the breaching tenant. *See* Miller & Starr, 10 Cal. Real Est. § 34:193 (4th ed.) ("When the landlord elects not to terminate the lease [under Section 1951.4], the tenant, not the landlord, has the duty to mitigate damages.").

In addition, Section 20.1 of the Lease gives Landlord the right to "use, apply, or retain all or any portion of the Security Deposit for the payment of Rent or other sums in default . . . or to compensate Landlord for any loss or damage that Landlord may suffer because of the Tenant's actions." Compl., Ex. 2, § 20.1. Section 20 also provides that La Perla "waive[d] the provisions of California Civil Code section 1950.7 and all other provisions of law" that would require Landlord to return the security deposit. *Id.*

In essence, both La Perla and Landlord contracted for these express terms, in some instances waiving provisions of California law, in order to authorize Landlord to do exactly what La Perla complains of. *See 250 L.L.C. v. PhotoPoint Corp*., 131 Cal. App. 4th 703, 718 (2005) ("[C]ommercial tenants may waive their rights under the [California] Civil Code."); *In re 8800 LLC,* 2019 WL 268577, at *22 (Bankr. C.D. Cal. Jan. 18, 2019) (same).

Despite acknowledging Landlord's rights under Section 1951.4 of the California Civil Code and the express terms of the Lease, La Perla maintains—improperly for the first time in its Opposition—that Landlord "terminated" the Lease by making demands for rent payment, "accepting" the keys, and initiating an unlawful detainer action. Opp. at 5–6. Yet, nowhere in La

Perla's Counter-Claim does it allege such facts.  *See generally* CC; *see also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a motion to dismiss.").

But, again, La Perla's argument blatantly ignores the express terms of the Lease that govern La Perla's commercial tenancy.  Section 16.2 of the Lease explicitly states that the Lease is not terminated "unless Landlord notifies Tenant in writing that Landlord elects to terminate this Lease," or "written notice to that effect," and that "***[n]o act by Landlord other than giving written notice to Tenant shall terminate this Lease***."  Compl., Ex. 2, § 16.2(a), (b) (emphasis added).  Therefore, regardless of the Landlord's purported "acceptance" the keys, demands for rent payments, and initiation of an unlawful detainer action, such actions do ***not*** constitute a "termination" under the Lease.  La Perla does not (and cannot) allege in its Counter-Claim that Landlord provided written notice to La Perla that the Lease was terminated.  Landlord never did.

While Section 16.2 of the Lease precludes La Perla's "termination" outright, Landlord also addresses La Perla's misguided case law.  La Perla cites *Willis v. Soda Shoppes of California, Inc.*, 134 Cal. App. 3d 899 (1982) for the proposition that "accepting return of keys to property from a tenant" terminates a lease.  Opp. at 5:20.  However, on appeal from a judgment, the court in *Willis* held that there was "sufficient evidence" to support the trial court's determination that landlord had accepted tenant's surrender of the premises and terminated the lease because the landlord had "stated that they would attempt to relet the premises," "requested that the keys be returned," and "picked up the keys" from the tenant.  134 Cal. App. 3d at 901–02.  Not only does the procedural posture of *Willis* make it inapposite, but La Perla's allegations are a far cry from *Willis*, where the Counter-Claim simply alleges that La Perla "sent" the keys to Landlord.  CC ¶ 12.

La Perla then cites to *In re Windmill Farms, Inc.*, 841 F.2d 1467 (9th Cir. 1988) for the proposition that "filing an unlawful detainer proceeding" terminates a lease.  Opp. at 5:21–22.  But that is not what the *In re Windmill Farms* court held.  Rather, the court held that "under California law a lease terminates for nonpayment of rent at least by the time the lessor files an unlawful detainer action, ***provided that*** a proper three-days' notice to pay rent or quit has been given, and the

1  lessee has failed to pay the rent in default within the three-day period, and *further provided that the*

2  *lessor's notice contained an election to declare the lease forfeited.*" 841 F.2d at 1471.[1]

3  Landlord's three-day notice to La Perla did *not* declare the Lease terminated or forfeited, the exact

4  opposite.  Compl., Ex. 3.  It explicitly stated that Landlord elected for damages pursuant to Section

5  16.2(a) of the Lease, that the notice would not operate as a waiver, and that all rights and remedies

6  of the Landlord were reserved.  *Id.*  Therefore, unlike *In re Windmill Farms*, Landlord did not

7  declare the Lease forfeited.

8        Nonetheless, if La Perla did allege facts that Landlord "accepted" the keys, made demands

9  of rent, and initiated an unlawful detainer action, such facts would not salvage its counterclaim

10  because they would not constitute a "termination" under the Lease, which requires written notice

11  from Landlord to La Perla.  *See* Compl., Ex. 2, § 16.2(a), (b).  Because Landlord never terminated

12  the Lease, Landlord was permitted to continue the Lease in full force and effect, collecting rent as it

13  became due, with no obligation to mitigate damages or re-let the Premises.  Accordingly, under

14  both California law and the express terms of the Lease, Landlord's conduct does not constitute a

15  breach of the Lease and La Perla's counterclaim must be dismissed.

16      **C.**    **La Perla's breach of implied covenant counterclaim is duplicative and should**
17             **be dismissed.**

18        While La Perla is correct that a party may plead breach of the implied covenant of good

19  faith and fair dealing in the alternative, (*see* Opp. at 7:5–9), that alternative claim for breach of the

20  implied covenant still cannot be duplicative of the party's breach of contract claim.  *See Landucci v.*

21  *State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) ("[A]lthough the California Supreme

22  Court has held that a plaintiff may bring both a breach of contract claim and a claim for breach of

23  the implied covenant of good faith and fair dealing, the Supreme Court has made clear that when

24  _____

[1] It is also important to note that the *In re Windmill Farms* court was analyzing whether the
25  landlord had terminated the lease under Section 1951.2 of the California Civil Code—not Section
1951.4—because that lease did not provide the landlord with the right to elect for remedies under
26  Section 1951.4.  *In re Windmill Farms, Inc.*, 841 F.2d at 1470.  Under Section 1951.2, "[e]xcept
as otherwise provided in Section 1951.4," if a tenant "breaches the lease and abandons the
27  property before the end of the term or if his right to possession is terminated by the lessor because
of a breach of the lease, the lease terminates."  *Id.* (quoting Cal. Civ. Code § 1951.2).  Section
28  1951.2 contains a critical exception, indicating that it is not applicable where, as here, the
landlord has opted for remedies under Section 1951.4.

both causes of action cite the same underlying breach, the implied covenant cause of action will be superfluous with the contract cause of action.  In other words, a claim alleging breach of the implied covenant of good faith and fair dealing cannot be 'based on the same breach as the contract claim,' or else it will be dismissed."); *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013) (dismissing plaintiff's breach of implied covenant claim as superfluous, holding that "[a] plaintiff may claim breach of contract and the implied covenant of good faith and fair dealing, but when both causes of action cite the same breach, the cause of action for breach of the implied covenant of good faith and fair dealing may be superfluous with the cause of action for breach of contract").  Here, La Perla's breach of implied covenant claim is based upon the same conduct and seeks the same contract damages as its breach of contract claim.  *Compare* CC ¶¶ 37–42, *with* CC ¶¶ 48–56.  Such overlap makes La Perla's breach of implied covenant claim "simply duplicative of [its breach of contract claim], and thus may be disregarded."  *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1392 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

La Perla's reliance on *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, 2023 WL 1768120 (N.D. Cal. Feb. 3, 2023) is likewise misplaced.  *See* Opp. at 8.  The court in *HotSpot Therapeutics* dismissed the breach of implied covenant claim because, despite plaintiff's "multiple references to 'bad faith,'" plaintiff's allegations "as pled, . . . appear to be allegations that [defendant] breached the contract, and not more."  2023 WL 1768120, at *4.  The same is true here.  Although La Perla alleges that Landlord "did not act fairly and in good faith," La Perla's allegations are nothing more than breach of contract and fail to include factual support for a claim of "bad faith."  *See* CC ¶ 54; *see also Hotspot Therapeutics*, 2023 WL 1768120, at *4.  This is further evidenced by La Perla's Opposition, which argues that Landlord "frustrated" the benefits to La Perla by failing to "mak[e] reasonable efforts to mitigate damages as required by the Lease."  *See* Opp. at 8:19–23.  Like the court in *HotSpot Therapeutics*, this Court should dismiss La Perla's breach of implied covenant claim.

1    What's more, as yet another basis for dismissal of this counterclaim, there can be no breach

2    of the implied covenant where a party to a contract is authorized to engage in that conduct.  *Song fi*

3    *Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) ("Plaintiffs cannot state a claim for

4    breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the

5    right to do what they did by the express provisions of the contract there can be no breach.'").  The

6    express terms of the Lease permitted Landlord to continue the Lease in full force and effect, collect

7    rent as it becomes due, and apply the security deposit to owed rent.  Compl., Ex. 2, §§ 16, 20.

8    Therefore, for the same reasons that La Perla's breach of contract counterclaim fails, so too does the

9    breach of implied covenant counterclaim.

10       **D.       La Perla's restitution counterclaim, whether quasi-contract or one of unjust
11                  enrichment, fails as a matter of law.**

12       Relative to its restitution claim, La Perla again misapplies California law.  *First*, California

13   law does not recognize restitution as a stand-alone cause of action.  *See Munoz v. MacMillan*, 195

14   Cal. App. 4th 648, 661 (2011) ("[T]here is no freestanding cause of action for 'restitution.'");

15   *Hamilton & High, LLC v. City of Palo Alto*, 89 Cal. App. 5th 528 n.14 (2023) ("[R]estitution is a

16   remedy and not a freestanding cause of action.").  Therefore, as a matter of law, the counterclaim

17   fails.

18       *Second,* La Perla asks the Court to interpret its restitution claim as a "quasi-contract claim

19   which 'may be pled in the alternative to contract claims' within the same complaint."  Opp. at 9.

20   But, even if the Court were to do that, La Perla's counterclaim still fails.  In order to avoid dismissal

21   and plead in the alternative, La Perla would have to allege that "the [Lease] is void or was

22   rescinded."  *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).  In an

23   attempt to satisfy that pleading requirement, La Perla points to its allegation in Paragraph 10 that

24   "[i]n or around April 2021, LPNA became unable to maintain operations on the Premises in part

25   due to the extreme rise in crime, homelessness, and waste outside of the Premises and in the

26   surrounding neighborhood(s)."  Opp. at 10:7–9; *see also* CC ¶ 10.  But Paragraph 10 does not

27   actually allege that the Lease is void or was rescinded.  La Perla's Opposition goes on to say that

28   the "sole purpose" of the Lease "was so that LPNA could display and sell apparel," and that

"COVID-19,[2] the rise of crime, homelessness, and waste" had "frustrated" that purpose.  Opp. at 10:10–13.  Yet, La Perla's Counter-Claim is entirely devoid of the allegation that the purpose of the Lease was "frustrated."  *See generally* CC.

Moreover, the allegations contained in Paragraph 10 cannot satisfy that pleading requirement because such facts, even if true, do not render the Lease unenforceable.  None of these facts constitute an affirmative defense (*e.g.*, duress, fraud, illegality, lack of capacity, etc.) to enforcement of the Lease.  As La Perla admits, the "sole purpose of the Lease . . . was so that LPNA could display and sell apparel" at the Premises.  Opp. at 10.  Yet, "crime, homelessness, and waste ***outside*** of the Premises" do not prevent La Perla from possessing and using the Premises to display and sell apparel.  *See* CC ¶ 10 (emphasis added).  La Perla's argument that the Lease was void or unenforceable starting "in or around April 2021" as a result of crime, homelessness, and waste, also fails to account for the ***seven years*** prior that La Perla possessed and used the Premises.  *See id.* ¶¶ 7, 10.  La Perla improperly disputes the validity of the Lease in an attempt to avoid dismissal, but the Counter-Claim does not contain factual allegations to support that argument.  Therefore, La Perla's restitution claim fails as a matter of law.

## III.    LEAVE TO AMEND SHOULD BE DENIED.

Courts have denied leave to amend where amendment would be futile.  *Song fi Inc.*, 108 F. Supp. 3d at 885 (denying leave to amend as futile where contract terms clearly foreclose claims).  For all the foregoing reasons, Counter-Defendant respectfully requests that the Court grant this Motion and dismiss each of La Perla's counterclaims in their entirety and with prejudice.

Dated:  June 23, 2023                              **PERKINS COIE LLP**


                                                   By: */s/Oliver M. Gold*
                                                       Oliver M. Gold

                                                   Attorney for Plaintiff
                                                   GREGG WILLIAMS, solely in his capacity as
                                                   court appointed Receiver

---

[2] It is also worth noting that "COVID-19" is not mentioned once in La Perla's Counter-Claim and that Paragraph 10 only references "rise in crime, homelessness, and waste outside of the Premises and in the surrounding neighborhood(s)."  *See* CC ¶ 10.