UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGG WILLIAMS,<br><br>  Plaintiff,<br><br>v.<br><br>LA PERLA NORTH AMERICA, INC.,<br><br>  Defendant. | Case No. 23-cv-01633-JSC<br><br>**GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 16 |

Gregg Williams ("Williams") alleges La Perla North America, Inc. ("La Perla") breached a lease (the "Lease") by failing to pay rent since May 2021 and abandoning the leased commercial property located at 170 Geary Street, San Francisco, California (the "Property") around April 2021. (Dkt. No. 1.)[1] Williams brings this action solely in his capacity as state court-appointed receiver. (*Id.* ¶ 3.) In response, La Perla filed an answer and counterclaim alleging causes of action for restitution, breach of contract, and breach of the implied covenant of good faith and fair dealing arising out of Williams' failure to mitigate damages as the Lease requires. (Dkt. No. 10.)

Williams' motion to dismiss La Perla's counterclaim causes of action is now pending before the Court. (Dkt. No. 16.) After carefully considering the parties' submissions, and having had the benefit of oral argument on July 13, 2023, the Court GRANTS Williams' motion to dismiss with 20 days' leave to amend. La Perla has not plausibly alleged a failure to mitigate because absent termination, an affirmative duty to mitigate is contrary to Landlord's rights under Lease Section 16.2(a) and California Civil Code Section 1951.4. *See* (Dkt. No. 1-2 at 32-33); Cal. Civ. Code § 1951.4.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# BACKGROUND

## A. The Lease

La Perla, a Delaware corporation with its principal place of business in New York, entered a contract to lease the Property from 166 Geary Street Retail Owner LLC ("Landlord"). (Dkt. No. 1 ¶ 4, 8.) Williams (the plaintiff and counterclaim defendant here) was appointed by the Superior Court of the State of California, County of San Francisco, as successor-in-interest to 166 Geary Street Retail Owner LLC. (*Id.* ¶ 3.)

Williams and La Perla agree the Lease was a valid contract. (Dkt. No. 19 at 10.) Under the 10-year Lease, La Perla agreed to pay $565,000 per year, paid monthly. (Dkt. Nos. 1 ¶ 9; 1-2 at 5.) The rent was to increase by 3% per year. (Dkt. No. 1 ¶ 9.) La Perla also agreed to pay specified additional rent monthly as set out in the Lease. (*Id.* ¶ 10.)

In 2021 La Perla vacated the Property. (Dkt. No. 10 at 10 ¶ 10.) Under the Lease, if La Perla failed to pay rent or abandoned the Property, and did not cure the failure within a specified amount of time, La Perla would be in default. (Dkt. 1-2 at 31.)

## B. Landlord's Options Upon Default

Under the Lease terms, upon default Landlord may: (a) continue the Lease and recover rent, (b) terminate the Lease and recover damages, and/or (c) re-lease the Property on behalf of La Perla. (*Id.* at 32-33.)

Option (a) is written in the Lease as follows:

> Landlord may continue this Lease in full force and effect, and this Lease shall continue in full force and effect as long as Landlord does not terminate Tenant's right to possession, and Landlord shall have the right to collect rent when due as set forth in California Civil Code Section 1951.4. During the period Tenant is in Default, Landlord may enter the Premises in accordance with applicable law and relet them, or any part of them, to third parties for Tenant's account, provided that any Rent in excess of the monthly Rent due hereunder shall be payable to Landlord as provided for below. No act by Landlord allowed by this paragraph shall terminate this Lease unless Landlord notifies Tenant in writing that Landlord elects to terminate this Lease.

(*Id.* at 32.)

1    Option (b), terminating the lease, is available to Landlord "at any time by giving *written*

2  notice to that effect . . . ." (*Id.* (emphasis added).)

3    Option (c), re-letting the Property, is available to Landlord if La Perla abandons the

4  Property or if Landlord elects to take possession of the Property. (*Id.* at 33.) Option (c) clarifies

5  "until Landlord elects to terminate this Lease, Landlord may, from time to time, without

6  terminating this Lease, recover all Rent as it becomes due pursuant to [option] (a) . . . ." (*Id.*)

7  Option (c) also states: "[w]ith respect to any remedy exercised by Landlord, *and to the extent not*

8  *contrary to Landlord's rights, elections and options herein*, Landlord shall have an affirmative

9  obligation to mitigate its damages." (*Id.* (emphasis added).)

10    The Lease also allows Landlord to "use, apply, or retain all or any portion of the [s]ecurity

11  [d]eposit for the payment of [r]ent or other sums in default . . . or to compensate Landlord for any

12  loss or damage that Landlord may suffer because of the Tenant's actions." (Dkt. 1-2 at 36.)

13    On December 1, 2022, Williams gave La Perla a notice of default resulting from the

14  abandonment and failure to pay rent. (Dkt. No. 1 ¶ 16.) Williams alleges La Perla failed to cure

15  the alleged breach within the time stipulated in the notice of default. (*Id.* ¶ 17.) Eventually,

16  Williams sued La Perla and asserts Landlord elected the remedies for default under Option (a).

17  Williams seeks $541,121.37 for "all amounts due and owing under the Lease." (Dkt. No. 1 ¶¶ 22,

18  29.)

19  **C. La Perla's Counterclaim**

20    La Perla brings a counterclaim against Williams in response. According to La Perla, "[i]n

21  or around April 2021, [La Perla] became unable to maintain operations on the [Property] in part

22  due to the extreme rise in crime, homelessness, and waste outside of the [Property] and in the

23  surrounding neighborhood(s)." (Dkt. No. 10 at 10 ¶ 10.) "On or around April 27, 2021, because it

24  could no longer maintain operations on the [Property], [La Perla] vacated the [Property]." (*Id.*

25  ¶ 11.) "On or around April 30, 2021 [La Perla] notified [Landlord] in writing that it was vacating

26  the premises." (*Id.* ¶ 12.) "Included in that written correspondence, [La Perla] sent [Landlord] all

27  of its keys to the premises." (*Id.*)

28

La Perla alleges Landlord "had an affirmative obligation pursuant to Section 16.2 of the Lease to mitigate its damages" and in violation of that obligation Williams did not make good faith attempts to re-let the Property. (Dkt. Nos. 10 at 10 ¶ 14; 1-2 at 33.) Additionally, La Perla alleges "rather than making good faith efforts to re-let the [Property], [Landlord] instead chose to apply [La Perla's] $1,290,598.36 Security Deposit to all rental payments owed pursuant to the Lease." (Dkt. No. 10 at 11 ¶ 16.) As a result, La Perla brings causes of action for restitution, breach of contract, and breach of the implied warranty of good faith and fair dealing. (Dkt. No. 10 at 11-14.) La Perla seeks to be awarded restitution of $1,290,598.36 in addition to costs and attorneys' fees. (*Id.* at 13.)

## LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) if it lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, the Court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a motion to dismiss." *Parker v. Nishiyama*, 438 F. App'x 642, 643 (9th Cir. 2011) (cleaned up).

## DISCUSSION

Williams moves to dismiss La Perla's counterclaim for four reasons. First, Williams argues La Perla failed to obtain permission from the Superior Court to bring claims against Williams as a state-appointed receiver. Second, Williams contends the Lease authorizes the conduct La Perla complains of, and does not require Williams to mitigate damages, resulting in no breach of contract. Third, Williams asserts La Perla fails to state a cause of action for restitution as La Perla does not allege the Lease is void or rescinded. Fourth, Williams alleges La Perla's

4

1    breach of the implied covenant of good faith and fair dealing is duplicative of its breach of

2    contract claim and thus should be dismissed.

### I. Claims Against a Court-Appointed Receiver

Williams first argues the counterclaim must be dismissed because a state court has not given La Perla permission to assert the causes of action against him.

"Generally, the capacity of receivers to sue or be sued in a federal district court is governed by the law of the state in which the court is held." *Ramirez v. Pasternak*, 2009 WL 10680732 at *5 (C.D. Cal. Apr. 30, 2009). In California "[a] receiver may not be sued without leave of court." *McCarthy v. Poulsen*, 173 Cal. App. 3d 1212, 1219 (1985). "[T]he failure to obtain court permission . . . must be raised by defendant at the earliest opportunity or it is waived." *Vitug v. Griffin*, 214 Cal. App. 3d 488, 493 (1989). In *Grant v. Buckner*, the United States Supreme Court held a counterclaim may be brought against a receiver appointed by a *federal* court without leave of the court who appointed the receiver. 172 U.S. 232, 238 (1898). However, no court appears to have addressed whether court permission must be obtained to assert a counterclaim, including a compulsory counterclaim, against a receiver appointed by a California state court.

This Court must anticipate how the California Supreme Court would resolve this question. *See T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018) ("When the highest court of a state has not directly spoken on a matter of state law, a federal court sitting in diversity must generally use its own best judgment in predicting how the state's highest court would decide the case." (cleaned up)), *certified question answered,* 194 Wash. 2d 413 (2019).

The court-appointed receiver, Williams, initiated this action in this federal court and La Perla asserted a compulsory counterclaim in response. (Dkt. No. 19 at 9.) The reason for the leave of court requirement is to not unduly interfere with the appointing court's jurisdiction by permitting unnecessary suits against the receiver. *See Ostrowski v. Miller*, 226 Cal. App. 2d 79, 84 (1964); *cf. In re Crown Vantage, Inc.*, 421 F.3d 963, 971 (9th Cir. 2005) ("allowing the unauthorized suit to proceed would have been a usurpation of the powers and duties which belonged exclusively to another court." (cleaned up)).

1    La Perla's compulsory counterclaim is not unnecessary; instead, it is required to be
2 brought or else forfeited.  Fed. R. Civ. P. 13(a).  Thus, allowing La Perla's claim will not interfere
3 with the administration of the California court's jurisdiction as La Perla has no other option than
4 to bring this counterclaim in this Court.  Further, by bringing the claim against La Perla in federal
5 court, Williams effectively waived the right to raise the failure to obtain court permission.
6 Williams chose to bring the claim against La Perla in this Court.  Then, after La Perla answered
7 and made a counterclaim, Williams raised the failure to obtain court permission.  Logically,
8 Williams waived the right to raise the failure to obtain court permission when Williams chose to
9 bring the claim in this Court rather than resolve the issue in the California court where Williams
10 was appointed.  *See Vitug*, 214 Cal. App. 3d at 493.
11    Federal courts have adopted similar reasoning to conclude a federally-appointed receiver
12 can be subject to a counterclaim without leave of court.  *See Grant*, 172 U.S. at 239; 28 U.S.C.A.
13 § 959(a) ("Trustees, receivers or managers of any property, including debtors in possession, may
14 be sued, without leave of the court appointing them, with respect to any of their acts or
15 transactions in carrying on business connected with such property. Such actions shall be subject to
16 the general equity power of such court so far as the same may be necessary to the ends of
17 justice . . . .").  The initiation of an action is an act "in carrying on business connected with such
18 property" and thus a counterclaim in response does not require leave of the appointing court.  The
19 same logic applies to state-court-appointed receivers.
20    So, the Court concludes the California Supreme Court would allow a compulsory
21 counterclaim to be brought against a state-court-appointed receiver without leave of court. Further,
22 as a matter of fairness, William's initiation of the action in federal court operates as a waiver of
23 William's right to raise the failure to obtain court permission.  Therefore, La Perla's claims may
24 be brought against Williams.
25 **II.    La Perla's Claims**
26    All of La Perla's causes of action arise from its assertion Williams had a duty to mitigate
27 after default.  In particular, La Perla argues Section 16.2(c) of the Lease applies and requires "an
28 affirmative obligation to mitigate damages." (Dkt. No. 10 at 10 ¶ 8.)  La Perla urges because

6

1  Landlord did not re-let the Property and mitigate damages, Landlord breached the Lease, was
2  unjustly enriched, and violated the implied covenant of good faith and fair dealing. Williams
3  moves to dismiss on the grounds La Perla does not plausibly allege Williams had a duty to
4  mitigate.

### A. The Duty to Mitigate

Section 16.2(c) imposes a duty to mitigate. However, the relevant provision states: "[w]ith respect to any remedy exercised by Landlord, *and to the extent not contrary to Landlord's rights, elections and options herein*, Landlord shall have an affirmative obligation to mitigate its damages." (Dkt. No. 1-2 at 33 (emphasis added).) Williams insists Landlord's rights under 16.2(a) to "elect damages under Section 1951.4 of the California Civil Code" is inconsistent with the duty to mitigate. (Dkt. No. 22 at 8.) The Court agrees.

#### 1. California Civil Code Sections 1951.2 and 1951.4

The Lease's options for Landlord after default follow California Civil Code Sections 1951.2 and 1951.4. Cal. Civ. Code §§ 1951.2, 1951.4. Section 1951.2 provides a lease is terminated if a tenant breaches and abandons the property, or if the landlord terminates the tenant's right to possession because of a breach. *In re Lomax*, 194 B.R. 862, 866 (B.A.P. 9th Cir. 1996); *see* Cal. Civ. Code § 1951.2. Once terminated, the landlord has a duty to mitigate damages. *See* Cal. Civ. Code § 1951.2.

However, Section 1951.4 is an exception to Section 1951.2. "Section 1951.4 allows the parties to contract away the landlord's duty to relet under § 1951.2." *In re Lomax*, 194 B.R. at 865–66. "Section 1951.4 allows a landlord to keep the lease in effect after a tenant abandons and permits the parties contractually to shift to the lessee the duty of mitigation in the event of a breach by the lessee." *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 365 (1992) (cleaned up). "The lease must contain language providing for this remedy and must also grant the tenant a right to sublet the premises which will not be unreasonably withheld." *In re Lomax*, 194 B.R. at 865–66. If the landlord terminates the lease, Section 1951.4 is not available as the lease would no longer be in effect and the tenant's right to sublet would no longer exist. *Id.* at 866.

7

Here, Section 16.2(a) of the Lease contains language providing for the Section 1951.4 remedy. And the Lease, Section 14, allows for subletting and assignment of the Lease. Thus, as long as Landlord did not terminate the Lease, the Lease allowed Landlord to elect its remedies under Section 16.2(a).

### 2. Termination of the Lease

La Perla insists Landlord had a duty to mitigate because Landlord "effectively" terminated the Lease. (Dkt. No. 19 at 11.) The Court cannot look beyond the complaint when assessing the motion to dismiss. *Parker*, 438 F. App'x at 643 (cleaned up). La Perla's counterclaim does not allege Landlord terminated the Lease, effectively or otherwise. Therefore, La Perla does not plausibly allege Williams has a duty to mitigate under Section 16.2(c) of the Lease.

Moreover, the Lease provides "[n]o act by Landlord other than giving written notice to Tenant shall terminate this Lease." (Dkt. No. 1-2 at 32.) There are no allegations in La Perla's counterclaim or in the opposition to the motion to dismiss that Williams provided written notice to terminate the Lease. This is an additional reason La Perla does not sufficiently allege facts supporting a plausible inference Landlord terminated the Lease and thus had a duty to mitigate.

*  *  *

In sum, La Perla has not plausibly alleged a breach of contract for failure to mitigate because absent termination, an affirmative duty to mitigate is contrary to Landlord's rights under Lease Section 16.2(a) and California Civil Code Section 1951.4. Cal. Civ. Code § 1951.4.

### B. Breach of Covenant of Good Faith and Fair Dealing

La Perla's breach of the implied covenant of good faith counterclaim is duplicative of its breach of contract claim. "A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal. App. 3d 1371, 1393 (Ct. App. 1990) (cleaned up). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395.

Here, the bad faith is merely the alleged breach of contract. The alleged facts and the damages sought are the same. There are no additional allegations of bath faith aside from the bad faith alleged in Landlord's decision not to mitigate damages; the same decision not to mitigate damages alleged in the breach of contract claim. The allegations are verbatim other than three sentences added to the breach of good faith claim:

> 52. If Counter-Defendant had made a good faith effort to relet the Premises after April 30, 2021, it would not have dissipated the entire Security Deposit.
>
> 53. Counter-Defendant's failure to comply with its obligation to mitigate its damages prevented the Premises from being relet and prevented a reduction in the amount of the rental payments owed by LPNA.
>
> 54. By failing to comply with its obligation to mitigate its damages pursuant to the Lease, Counter-Defendant did not act fairly and in good faith.

(Dkt. No. 10 at 14 ¶ 52-54.) These additional allegations simply restate the allegations of a failure to mitigate damages already alleged in the breach of contract claim.

As the breach of good faith duty claim is duplicative of the breach of contract claim it fails. *See HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-CV-04109-TSH, 2023 WL 1768120, at *5 (N.D. Cal. Feb. 3, 2023). Moreover, "Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing, because if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Song fi Inc. v. Google, Inc*., 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (cleaned up).

**C.  Restitution Cause of Action**

"[A] party to an express contract can assert a claim for restitution based on unjust enrichment by alleging in that cause of action that the express contract is void or was rescinded." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (cleaned up). La Perla asserts the "sole purpose of the Lease . . . was so that [La Perla] could display and sell apparel." (Dkt. No. 19 at 16.) La Perla argues they "became unable to maintain operations on the [Property] in part due to the extreme rise in crime, homelessness, and waste outside of the [Property] and in the surrounding neighborhood(s)." (Dkt. No. 10 at 10 ¶ 10.) Under California

9

law "[t]he doctrine of frustration excuses contractual obligations where [p]erformance remains entirely possible, but the whole value of the performance to one of the parties at least, and the basic reason recognized as such by *both* parties, for entering into the contract has been destroyed by a supervening and unforeseen event." *SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC*, 87 Cal. App. 5th 882, 895, *review denied* (Apr. 26, 2023) (cleaned up).  In the lease context, "the applicability of the doctrine of frustration depends on the total or nearly total destruction" of the lease's purpose.  *Lloyd v. Murphy*, 25 Cal. 2d 48, 53 (1944).

Mere general allegations of crime, homelessness, and waste are not sufficient to plausibly support an inference of destruction, or near total destruction, of La Perla's ability to display and sell apparel.  *See Lloyd v. Murphy*, 25 Cal. 2d 48, 53 (1944).  Therefore, La Perla does not sufficiently allege the contract is void or rescinded and La Perla's restitution claim must be dismissed.

## CONCLUSION

For the reasons stated above, the Court GRANTS Williams' motion to dismiss the counterclaim causes of action with 20 days' leave to amend.

This Order disposes of Docket No. 16.

**IT IS SO ORDERED.**

Dated: July 20, 2023

JACQUELINE SCOTT CORLEY
United States District Judge