1

2

3

4
UNITED STATES DISTRICT COURT

5
NORTHERN DISTRICT OF CALIFORNIA

6

7
GREGG WILLIAMS,                              Case No. 3:23-cv-01633-JSC

8
                    Plaintiff,

9
        v.                                   **ORDER RE: MOTION FOR DEFAULT JUDGMENT AND REQUESTING A SUPPLMENTAL SUBMISSION REGARDING DAMAGES**

10
LA PERLA NORTH AMERICA, INC.,

11
                    Defendant.               Re: Dkt. No. 51

12

13
        Gregg Williams, in his capacity as court-appointed Receiver, brought this action against La

14
Perla North America, Inc. ("La Perla"), alleging La Perla breached a lease between La Perla and

15
Williams' predecessor in interest. (Dkt. No. 1.)[1]  Williams alleges the lease extends until June of

16
2024, but La Perla has failed to pay rent since May 2021, and La Perla abandoned the leased

17
commercial property located at 170 Geary Street, San Francisco, around April 2021. (*Id.*)  Now

18
pending before the Court is Plaintiff's motion for default judgment.  (Dkt. No. 51.) After careful

19
consideration of the briefing, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-

20
1(b), and GRANTS Plaintiff's motion for default judgment.  However, the Court has questions

21
regarding the amount of damages sought as detailed in this Order.  Plaintiff shall file a

22
supplemental submission, including supplemental evidence if needed, addressing the damages

23
question by May 16, 2024.  This supplemental submission shall be served on Defendant's

24
withdrawn counsel.

25
                              **COMPLAINT ALLEGATIONS**

26
        The Court previously detailed the Complaint allegations (Dkt. No. 32 at 2-4), and the

27

28
---
[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1    Court adopts that description by reference here.

2                              **PROCEDURAL BACKGROUND**

3           Williams filed a complaint alleging one cause of action: breach of contract.  (Dkt. No. 1.)

4    Plaintiff filed a proof of service of summons, indicating Plaintiff served an agent of La Perla by

5    personal service.  (Dkt. No. 7.)  La Perla appeared in the case, filing an answer to the complaint

6    and a counterclaim.  (Dkt. No. 10.)  Plaintiff moved to dismiss the counterclaim, and the Court

7    granted the motion with leave to amend.  (Dkt. No. 32.)  La Perla filed an amended answer and

8    amended counterclaim.  (Dkt. No. 33.)  Again, Plaintiff moved to dismiss the counterclaim, and

9    the Court dismissed it without leave to amend.  (Dkt. No. 40.)  Following that Order, the parties

10   engaged in mediation, but the case did not settle.  (Dkt. No. 41.)

11          In January of 2024, La Perla's attorneys filed a motion to withdraw.  (Dkt. No. 42.)  The

12   Court granted the motion and, because La Perla is a corporation that may only appear in federal

13   court through licensed counsel, *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th

14   Cir. 1993), ordered La Perla to obtain new counsel within 30 days of the order.  (Dkt. No. 45 at 5.)

15   No new counsel appeared on La Perla's behalf.  The Court therefore ordered La Perla's default on

16   April 4, 2024.  (Dkt. No. 50.)  Plaintiff subsequently filed the now pending motion for default

17   judgment.  (Dkt. No. 51.)  La Perla did not respond.

18   **I.      DEFAULT JUDGMENT**

19          **A.      Legal Standard**

20          After entry of default, a court may exercise discretion to grant default judgment on the

21   merits of the case.  Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.

22   1980).  The complaint's factual allegations regarding liability are deemed admitted by the non-

23   moving party and are accepted as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

24   (9th Cir. 1987).  Courts in the Ninth Circuit apply the *Eitel* factors, detailed below, to determine if

25   default judgement is appropriate.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

26          **B.      A. Sufficiency of Service of Process**

27          The Court must assess whether the party against whom default judgment is sought was

28   properly served with notice of the action.  *Penpower Tech. Ltd. V. S.P.C. Tech.*, 627 F. Supp. 2d

United States District Court
Northern District of California

2

1083, 1088 (N.D. Cal. 2008).  A corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4 (h)(1)(B).

Here, service was sufficient because Plaintiff properly served Trudy Desbien, an authorized agent of Defendant.  (Dkt. No. 7.)  Additionally, Defendant appeared and filed a responsive pleading in this case (Dkt. No. 10), which waived any defect in service.  *See* Fed. R. Civ. P. 12(h)(1); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *amended*, 807 F.2d 1514 (9th Cir. 1987) ("A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction.").

## C.   Jurisdiction

"When entry of judgment is sought against a party who has failed to . . . defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### 1.   Subject Matter Jurisdiction

This Court has subject matter jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1).  La Perla is a Delaware corporation, with its principal place of business in New York.  (Dkt. Nos. 1 ¶¶ 3-5; 10 ¶ 4.)  Gregg Williams is a citizen of California.[2]  (*Id.* ¶ 3.)  So, diversity jurisdiction exists.

_____

[2] Mr. Williams is the court-appointed receiver and successor-in-interest to 166 Geary Street Retail Owner LLC, a Delaware limited liability company.  (Dkt. No. 1 ¶ 3.)  The court's order appointing Mr. Williams as receiver granted him broad powers, including the power to "institute and prosecute all suits" to protect the subject property (Dkt. No. 1-1 ¶ 20), and to "negotiate, make, enter into, or modify contracts or agreements affecting any part or all of the property.  (*Id.* ¶ 17.)  Accordingly, the Court finds Mr. Williams is the "real party to the controversy for purposes of diversity jurisdiction" because he "possesses" the "powers to hold, manage, and dispose of assets" for the benefit of the property.  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980) (holding "active trustees whose control over the assets held in their names is real and substantial" are the "real parties to the controversy," so for purposes of diversity jurisdiction courts can disregard "the citizenship of the trust beneficiaries" and focus only on the trustees' citizenship); *see also Bank of Am. v. Musselman*, 222 F. Supp. 2d 792, 794 n.3 (E.D. Va. 2002) ("When a court-appointed receiver is a party in a diversity action, the citizenship of the receiver is considered for purposes of subject matter jurisdiction."); 13E Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3606 n.56 (3d ed. 2009) (citing cases indicating the court-appointed receiver is the real party in interest in a diversity action, so their citizenship governs for diversity actions).

United States District Court
Northern District of California

### 2.    Personal Jurisdiction

This Court has personal jurisdiction over La Perla because La Perla did business in California, and this lawsuit arises out of La Perla's lease of real property in California.  (Dkt. Nos. 1 ¶¶ 6, 8; 10 ¶¶ 4, 6, 8.)  Additionally, as discussed above, La Perla appeared and filed a responsive pleading in this case (Dkt. No. 10), which waived any defect personal jurisdiction.  *See* Fed. R. Civ. P. 12(h)(1); *Benny*, 799 F.2d at 492.

### D.    *Eitel* Factors

In exercising discretion to grant default judgment, courts consider the factors laid out in *Eitel*:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d at 1471–72.

### 1.    Prejudice to the Plaintiff

The first factor considers whether Plaintiff will suffer prejudice if the Court declines to enter default judgment, that is, whether Plaintiff will be left without a legal remedy.  *GS Holistic, LLC v. MSA-Bossy Inc.*, No. 22-CV-07638-JSC, 2023 WL 3604322 at *3 (N.D. Cal. May 22, 2023).

Plaintiff alleges Defendant violated a contractual duty to pay rent under the terms of a lease agreement, incurring damages in the form of lost payments. (Dkt. No. 1.)  While La Perla initially engaged in litigation, La Perla's counsel withdrew from the action and La Perla failed to obtain substitute counsel.  "[C]orporations may appear in the federal courts only through licensed counsel."  *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993).  Because La Perla failed to obtain substitute counsel despite the Court's previous Orders instructing it to do so, litigation in this case cannot continue.  As such, there is a high likelihood Plaintiffs will suffer prejudice if default judgment is not granted because La Perla has no other recourse for relief.  *See also United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (when a corporation that retained an attorney to answer the complaint, but then

4

1    "failed" "to retain counsel for the duration of the litigation," it "was perfectly appropriate" for a

2    district court to enter default judgment against the corporation).

3           **2.      Merits of Plaintiff's Substantive Claim/Sufficiency of the Complaint**

4           The second and third factors, "often analyzed together," consider whether the facts as

5    pleaded in the complaint address the merits and sufficiency of plaintiff's claims. *Dr. JKL Ltd. v.*

6    *HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). In analyzing these *Eitel* factors,

7    all well-pleaded allegations regarding liability are accepted as true and deemed admitted. *Fair*

8    *Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Consequently, "[t]he district court is

9    not required to make detailed findings of fact." *Id.* at 906.

10          Plaintiffs state a breach of contract claim. (Dkt. No. 1 ¶¶ 23-30.) In California, "[t]he

11   elements of a breach of contract claim are" (1) "a contract was formed;" (2) "the plaintiff did

12   everything required by the contract;" (3) "the defendant did not do something required by the

13   contract;" and (4) "the plaintiff was harmed as a result." *CSAA Ins. Exch. v. Hodroj*, 72 Cal. App.

14   5th 272, 276 (2021). Plaintiff adequately pleads these elements: he alleges (1) La Perla entered a

15   commercial lease with Plaintiff's predecessor, forming a contract (Dkt. No. 1 ¶ 24); (2) Plaintiff

16   "performed all conditions, covenants and promises required of it under the terms and conditions of

17   the Lease" (*Id.* ¶ 25); (3) the terms of the lease required La Perla to pay rent on a monthly basis

18   (*Id.* ¶ 26), but La Perla breached the lease by failing to pay rent beginning in May 2021 (*Id.* ¶ 27);

19   and (4) Plaintiff suffered harm, in the form of monetary damages, as a result of La Perla's

20   breaches of the lease. (*Id.* ¶ 29.) Because Plaintiff has sufficiently alleged Defendant breached

21   the contract, Plaintiff states a claim against Defendant and Plaintiff's complaint is sufficient.

22          **3.      Sum of Money**

23          The fourth factor considers the reasonableness of the sum of money at stake. *See, e.g., J&J*

24   *Sports Prod., Inc. v. Rafael*, No. CIV S-10-1046 LKK, 2011 WL 445803, at *2 (E.D. Cal. Feb. 8,

25   2011) (explaining courts can consider the sum of money when deciding a default judgment).

26   "Default judgment is disfavored when a large amount of money is involved or unreasonable in

27   light of the potential loss caused by the defendant's actions." *HICA Educ. Loan Corp. v. Warne*,

28   No. 11-CV-04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012). The Court analyzes

United States District Court
Northern District of California

this factor "in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  Put differently, when the sum "is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Bd. of Trs. v. Core Concrete Constr.*, Inc., No. 11–02532 LB, 2012 WL 380304, at \*4 (N.D. Cal. Jan. 17, 2012).

Plaintiff seeks $1,362,506.82 in actual damages based on his calculation of "all Rent due and owing, as well as late fees," minus the money Plaintiff retained from La Perla's letter of credit.  (Dkt. No. 51-1 ¶¶ 18-19.)  This sum is reasonable because it is based on the contractual provisions indicating the landlord has a right to "continue th[e] Lease in full force and effect" upon the tenant's default and "shall have the right to collect rent when it is due."  (Dkt. No. 1-2 §16.2(a).)  Further, the lease agreement provides "if any installment of Rent or any other sums due from Tenant are not received within five (5) days of the due date, then Tenant shall pay to Landlord a late charge equal to ten percent (10%) of the overdue amount."  (*Id.* § 4.5.)

While, as Plaintiff admits, this sum is "significant," it is the amount indicated by the lease's own terms.  *See Warne*, 2012 WL 1156402, at \*3 (explaining "[w]hile the amount Plaintiff seeks is significant," it was reasonable because "the amount requested is supported by the terms of the Note").  Moreover, courts in the Ninth Circuit have awarded damages above the amount requested by Plaintiff in motions for default judgment in breach of contract cases.  *See, e.g.*, *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1446 (9th Cir. 1991) (affirming judgment of  "$2.2 million to compensate for lost profits, pre-judgment interest, and out-of-pocket expenses" based on contract, fraud, and civil conspiracy claims); *Oracle USA, Inc. v. Qtrax, Inc.*, No. C 09-3334 SBA BZ, 2011 WL 4853383, at \*1 (N.D. Cal. Oct. 13, 2011) (entering a judgment "in the amount of $1,883,591.55 in compensatory damages based on Plaintiffs' contract claim").

As such, the sum of money at stake favors granting default judgment.

**4.    Dispute Regarding Material Facts**

The fifth factor requires the Court to consider whether a dispute is possible concerning material facts.  Here, a dispute concerning material facts is unlikely.  Defendant, in its previous

United States District Court
Northern District of California

United States District Court
Northern District of California

1   pleadings and briefing, conceded it entered a lease with Plaintiff's predecessor and vacated the

2   property in April 2021, and admits it is "undisputed that [La Perla] defaulted on rental payments."

3   (Dkt. No. 37 at 6, 12.)   Further, "[u]pon entry of default, all well-pleaded facts in the complaint

4   are taken as true, except those relating to damages," so at this stage "no genuine dispute of

5   material facts would preclude granting [Plaintiff's] motion." *PepsiCo, Inc.*, 238 F. Supp. 2d at

6   1177.

7           Thus, this factor favors entry of default judgment because Defendant is or reasonably

8   should be aware of the lawsuit and yet has not "challenge[d] the accuracy of the allegations in the

9   complaint." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal.

10  2010).

11

12                  **5.      Excusable Neglect**

13          The sixth factor "favors default judgment where the defendant has been properly served or

14  the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG*

15  *Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).  Here, Defendant did initially

16  respond to the complaint, so it is clear Defendant is aware of the lawsuit.  Despite this knowledge,

17  Defendant failed to retain counsel as ordered by the Court, and therefore Defendant cannot

18  continue to participate in litigation.  Therefore, the sixth factor favors default because it is unlikely

19  Defendant's failure to respond is the result of excusable neglect.

20                  **6.      Policy Favoring a Decision on the Merits**

21          The final *Eitel* factor considers the policy of favoring a decision on the merits. Because

22  public policy favors a decision on the merits, default judgment is inherently undesirable. *Eitel*.,

23  782 F.2d at 1472.  However, the policy is one factor weighed among many when granting default

24  judgment. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  When a defendant "makes a decision on the

25  merits impractical, if not impossible," default judgment is warranted. *Id.* at 1178.  Here, given

26  Defendant's failure to obtain counsel, a decision on the merits is impossible.  Because the other

27  *Eitel* factors favor Plaintiff, the Court is not precluded from granting default judgment despite the

28  policy favoring a decision on the merits.

1

### 7.      Liability Following *Eitel* Analysis

2      Taking all the *Eitel* factors into consideration, the factors weigh in favor of default

3  judgment.  Plaintiffs will be prejudiced if default judgment is not granted.  Plaintiffs plead viable

4  claims, the sum of money in question is reasonable based on the circumstances, there is no

5  apparent dispute of material fact regarding liability, and Defendant's failure to respond does

6  appear to be the result of excusable neglect.  Therefore, Defendant is liable for the breach of the

7  lease agreement.

8    ### E.      Damages

9      On a motion for default judgment, the Court does not accept factual allegations regarding

10  damages as true. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18 (citing *Geddes v. United Financial*

11  *Group*, 559 F.2d 557, 560 (9th Cir. 1977)).  Instead, claimants are required to prove all damages

12  sought in the complaint (and no more than sought in the complaint).  *See* Fed. R. Civ. P. 54(c).

13  "The district court may determine the amount of damages without an evidentiary hearing where

14  'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *Lasheen v.*

15  *Embassy of The Arab Republic of Egypt*, 625 F. App'x 338, 341 (9th Cir. 2015) (quoting *Davis v.*

16  *Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)).

17      Here, the complaint allegations and the evidence supplied in support of default judgment

18  fail to justify the damages sought.  The lease provides for payment of:

19
20
21
- "Base Rent . . . on a monthly basis." (Dkt. No. 1-2 § 4.1.)  "Base Rent" is defined as "$565,000 per annum" for year one. (*Id.* at 5.)  Further, "[o]n the first anniversary of the Rent Commencement Date and on each anniversary thereafter, Base Rent shall increase by three percent (3%)." (*Id.*)

22
23
24
- "Additional Rent" defined as "the amount of (a) Tenant's Percentage Share of Operating Expenses paid or incurred by Landlord, and (b) Tenant's Percentage Share of Property Taxes paid or incurred by Landlord." (*Id.* § 4.1.)

25  The lease also provides for late fees in the event the tenant fails to comply with payment

26  obligations under the lease:

27
28
- "[I]f any installment of Rent or any other sums due from Tenant are not received within five (5) days after the due date, then Tenant shall pay to Landlord a late charge equal to

United States District Court
Northern District of California

ten percent (10%) of the overdue amount."  (*Id.* § 4.5.)

- "If any installment of Rent is not received within five (5) days after the due date, then such amount will bear interest from the due date until paid at the rate of ten percent (10%) per year."  (*Id.* § 4.6.)

Plaintiff has provided a ledger of all the rent La Perla owes, including late fees, since La Perla stopped paying for the lease in May 2021.  (Dkt. No. 51-2.)  However, this ledger contains some fees the Court does not understand.  For example, the first entry in the ledger is:

| Trans Date | From | To | Description | Net | Tax | Total |
|---|---|---|---|---|---|---|
| Currency : USD | | | | | | |
| 5/1/2021 | | | CAMOT CAMOT - CAM Other | 750.00 | 0.00 | 750.00 |

(Dkt. No. 51-2 at 2.)  While this $750 charge may reflect the "Tenant's Percentage Share of Operating Expenses paid or incurred by Landlord" and therefore constitute "Additional Rent," which is permitted under the lease, the only description of the charge is "CAMOT CAMOT – CAM Other."  The Court does not know what this means.  There are similar $750 charges each month.

Similarly, in August of 2021, there are the following three charges:

| | | | | | | |
|---|---|---|---|---|---|---|
| 8/31/2021 | | | DBLEG DBLEG - Exp Reimb-Legal NonOp | 275.40 | 0.00 | 275.40 |
| 8/31/2021 | | | DBLEG DBLEG - Exp Reimb-Legal NonOp | 275.40 | 0.00 | 275.40 |
| 8/31/2021 | | | DBLEG DBLEG - Exp Reimb-Legal NonOp | 1,684.70 | 0.00 | 1,684.70 |

(*Id.*)  Since Plaintiff is separately moving for attorneys' fees, the Court does not understand what "Exp-Reimb-Legal NonOp" might be.

Finally, the Court does not understand how late fees were calculated.  The first late fees listed are as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/31/2021 | | | LATEF LATEF - Late Fee | 18,713.05 | 0.00 | 18,713.05 |
| 12/31/2021 | | | LATEF LATEF - Late Fee | 49,161.19 | 0.00 | 49,161.19 |

(*Id.*)  According to the terms of the lease, late fees become due when payment is not received within five days of the deadline and late fees are ten percent of the overdue amount.  (Dkt. No. 1-2 § 4.5.)  Further, all unpaid rent accrues interest at a rate of 10% a year.  (*Id.* § 4.6.)  Accordingly, late fees should have begun in May 2021—as Plaintiff alleges La Perla stopped paying for the

lease in May.  But La Perla only started assessing late fees in December of 2021, and inexplicably assessed two late charges on the same date without providing any information about how those late fees were calculated.  As of December 30, 2021, Plaintiff alleges Defendant owed Plaintiff $491,611.86 in unpaid rent and charges.  Ten percent of that total is $49,161.19—the amount of the second late fee assessed on December 31, 2021.  But then where does the first late fee come from?  Plaintiff does not explain.

Finally, Plaintiff does not indicate whether Plaintiff applied La Perla's security deposit to the total owed.  The lease provided for a security deposit of $565,000 and a letter of credit of $1,130,000.  (Dkt. No. 1-2 at 6.)  Further, the lease indicated "[i]f Tenant fails to pay Rent or other sums due under this Lease . . . Landlord may use, apply, or retain all or any portion of the Security Deposit for the payment of Rent or other sums in default."  (*Id.* § 20.1.)  The ledger indicates the letter of credit was applied to the total amount La Perla owes.  (Dkt. Nos. 51-1 ¶ 19; 51-2 at 3.)  However, Plaintiff does not explain if Plaintiff retained the security deposit and whether that was also applied to the amount Defendant owes.

So, before deciding how much to award in monetary damages, the Court requires additional evidence and explanation.

## II.    ATTORNEYS' FEES AND COSTS

Plaintiff requests $152,630.10 in attorneys' fees and $1,447.31 in costs.  (Dkt. No. 51-3 ¶¶ 41-42.)

### A.    Attorneys' Fees

Under California Civil Code § 1717(a), "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs."  Cal. Civ. Code § 1717(a).  Here, the Lease provides the "prevailing party" in "an action to enforce the terms of the lease" is "entitled to recover from the other party the reasonable costs and attorneys' fees incurred in connection with such action."  (Dkt. No. 1-2 ¶ 26.)

The "lodestar method" is the appropriate method for evaluating Plaintiff's request for

1    attorneys' fees, which is "calculated by multiplying the number of hours the prevailing party

2    reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

3    hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod.*

4    *Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  In determining whether a prevailing party's

5    requested fees are reasonable, the Court considers the "experience, skill, and reputation of the

6    attorneys requesting fees," and the "rate prevailing in the community for similar work performed

7    by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Hum.*

8    *Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205,

9    1210-11 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987)).

10       Plaintiff filed a supporting declaration from attorney Oliver M. Gold in support of its

11   motion for attorneys' fees. (Dkt Nos. 51-3.)  Plaintiff's request for attorneys' fees was calculated

12   according to "a summary of litigation activities conducted by" the law firm's "timekeepers." (*Id.*

13   ¶ 6.)  This summary was created "from reviewing the timekeeper records associated with a matter

14   that was set up to record the time" lawyers spend on this case.  (*Id.*)  Plaintiff's counsel states the

15   "timekeepers record their time at or near the time the activity was performed." (*Id.*)  Plaintiff's

16   counsel attests they kept "daily electronic records" of time. (Dkt. No. 66-1 at 1.)

17       Plaintiff seeks to recover reasonable attorneys' fees for the work of Oliver M. Gold, John

18   David Larsen, and Lauren A. Trambley.  (Dkt. No. 51-3 ¶¶ 38-40.)  Mr. Gold is a partner at

19   Perkins Coie LLP and has been an attorney since 2011.  (*Id.* ¶ 38.)  His billing rate was $900 per

20   hour in 2023 and $1,125 per hour in 2024.  (*Id.*)  Mr. Larsen is also a partner at Perkins Coie LLP,

21   and has been an attorney since 1979.  (*Id.* ¶ 39.)  Mr. Larsen's rates are not attested to in the

22   declaration, but based on the attached exhibit, they appear to be around $960 per hour in 2022,

23   $995 per hour in 2023, and $1,065 per hour in 2024.  Ms. Trambley is a third-year associate at

24   Perkins Coie LLP and has been an attorney since 2021.  (*Id.* ¶ 40.)  Her billing rate for this matter

25   was $575 per hour in 2023 and $710 per hour in 2024.  (*Id.*)

26       While counsels' attested rates are on the high end of the spectrum, reasonable hourly rates

27   in the Northern District of California are comparable to these rates.  (Dkt. No. 51-3 ¶ 43);

28   *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2020 WL 1921774, at *8 (N.D. Cal. Mar.

United States District Court
Northern District of California

11

24, 2020) (finding $1000 per hour for senior partners and $855 per hour for junior partners reasonable in 2020); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800" and "for associates from $285 to $510" as of 2015) (cleaned up).  Therefore, the hourly rates at issue are reasonable considering prevailing regional rates and the attorneys' experience.

Counsel's hours billed are also reasonable. Counsel attests the work performed throughout this litigation included: drafting the complaint (Dkt. No. 51-3 ¶ 8), moving to dismiss La Perla's counterclaims twice (*Id.* ¶¶ 11-17), mediation (*Id.* ¶¶ 18-24), preparing for depositions (*Id.* ¶¶ 25-28), opposing La Perla's counsel's motion to withdraw as counsel (*Id.* ¶¶ 29-31), and drafting the present motion for default judgment.  (*Id.* ¶¶ 32-34.)  A review of the timesheet and declaration filed in support of this motion indicates there are no redundancies or duplicate entries in the timesheet.  Thus, the hours billed are reasonable.

So, Plaintiff has demonstrated the request for attorneys' fees in the amount of $152,630.10 is reasonable.

### B.     Costs

Plaintiff seeks $1,447.31 in costs related to investigation, service costs, and filing fees. (Dkt. No. 51-3 ¶ 42.)  Federal Rules of Civil Procedure 54(d)(1) provides a prevailing party is entitled to costs.  Plaintiff requests the following:

| Description | Amount |
|---|---|
| Federal Express - Air express charge to Hughes Hubbard & Reed LLP; First Legal Network LLC (ACH) - Filing fees E-FILE; Summit Investigations LLC - Professional Services - Asset Investigation on La Perla North America, LLC and Banking Search | $959.86 |
| Nationwide Legal Services LLC - Service of Process fee | $212.70 |
| First Legal Network LLC (ACH) - Filing fees - e-Filing | $6.00 |
| First Legal Network LLC (ACH) - Filing fees -e-Filing | $30.00 |
| First Legal Network LLC (ACH) - Filing fees; Bay Area File LLC - Filing fees - Legal Services C23-01897; First Legal Network LLC (ACH) - Courtesy copy delivery | $238.75 |

United States District Court
Northern District of California

(Dkt. No. 51-5 at 2.)

Courts have found similar costs are reasonable. Thus, Plaintiff's total costs are appropriate.

## CONCLUSION

Plaintiffs' service of process to Defendant was sufficient, and this Court has both subject-matter and personal jurisdiction in this case. Moreover, the *Eitel* factors weigh in favor of entering default judgment for Plaintiff. So, the Court GRANTS the motion for default judgment of liability. And, the Court GRANTS Plaintiff's motion for attorneys' fees and costs and AWARDS Plaintiff $152,630.10 in attorneys' fees and $1,447.31 in costs.

Before the Court can enter final judgment, however, more information is required regarding the monetary judgment amount. Plaintiff shall file a supplemental submission, including supplemental evidence if needed, addressing the damages question by May 16, 2024. This supplemental submission shall be served on Defendant's withdrawn counsel.

**IT IS SO ORDERED.**

Dated: May 2, 2024

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California